[No. B197743. Second Dist., Div. One. Apr. 29, 2008.]

YAN JU WANG, Plaintiff and Respondent, v.
GEORGE VALVERDE, as Director, etc., Defendant and Appellant.

COUNSEL

Edmund G. Brown, Jr., Attorney General, Jacob A. Appelsmith, Assistant Attorney General, Silvia M. Diaz and Martin H. Milas, Deputy Attorneys General, for Defendant and Appellant.

Law Offices of Ricky W. Poon and Ricky W. Poon for Plaintiff and Respondent.

OPINION

**ROTHSCHILD, J.**—The trial court granted Yan Ju Wang's petition for a writ of administrative mandate compelling the Department of Motor Vehicles

(DMV) to set aside its revocation of Wang's class C driver's license. The DMV appeals, and we affirm.

## BACKGROUND

The facts necessary to our decision are not in dispute. The trial court provided the following useful summary: "[Wang], the holder of a valid Class C (noncommercial) driver's license, applied for a Class B (commercial) driver's license. She was given a written examination to determine whether she was qualified for a Class B license, but she was not permitted to complete that examination because she was allegedly cheating in the taking of the examination by using crib notes. [¶] [Wang] was never criminally prosecuted for using crib notes, under Vehicle Code section 14610.5, because the [DMV] determined that there was insufficient evidence to support criminal action. [Citation.] The only administrative action taken against [Wang] by the [DMV] was to order the revocation of her Class C (noncommercial) driver's license."

After exhausting her administrative remedies, Wang filed a petition for writ of administrative mandate to compel the DMV to set aside the revocation of her class C license. The parties provided the trial court with briefing and evidence, including the administrative record of the DMV proceedings.

The trial court granted Wang's petition. The court reasoned that "[t]he issue before the court is whether, as a matter of law, the DMV can revoke [Wang's] Class C license because it caught her cheating in an examination for a Class B license." The court concluded that "[n]o such action is authorized by the Vehicle Code." The DMV timely appealed.

## DISCUSSION

We review the trial court's conclusions of law de novo. (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278].)

The DMV argues that, as a matter of law, the DMV does have authority to revoke Wang's class C license because it allegedly caught her cheating on the examination for a class B license. The DMV purports to derive that authority from the Vehicle Code[1] as follows: (1) Section 13359 provides that the DMV "may suspend or revoke the privilege of any person to operate a motor vehicle upon any of the grounds which authorize the refusal to issue a license"; (2) section 12809, subdivision (d), provides that the DMV may

---

[1] All subsequent statutory references are to the Vehicle Code.

refuse to issue a license to any person who has "committed any fraud in any application"; (3) an examination is part of an application; (4) the use of a crib sheet in taking an examination is a fraudulent act; so (5) by using the crib sheet, Wang committed a fraud in an application, which therefore authorized refusal to issue a class B license, which therefore authorized revocation of her class C license, because any ground for refusal to issue a license is also a ground for revocation of a license.

█ The DMV's argument thus depends upon the DMV's contention that under section 13359 *any* ground for refusal to issue *one* license is also sufficient to justify revocation of a *different* license. The DMV cites no authority for its construction of section 13359. We have found no case on point, but we conclude that the DMV's interpretation cannot be correct, because it would lead to untenable results. For example, if the holder of a class C license applied for a class B license, took the exam *without cheating or committing any other impropriety*, and failed the exam, then the DMV would be authorized to revoke the class C license according to the DMV's construction of section 13359, because "any of the grounds which authorize the refusal to issue" the class B license would also authorize the DMV to "suspend or revoke" the class C license. In general, the DMV's interpretation of the statute would authorize revocation of a class C license held by *any* unsuccessful applicant for a class B license. The statutory requirements for a class B license, however, are more demanding than the statutory requirements for a class C license, so statutory ineligibility for a class B license has no tendency, in itself, to show lack of statutory entitlement to a class C license. (See, e.g., § 12804.9, subd. (a)(2).) █ "We must harmonize statutes dealing with the same subject if possible [citation] and avoid interpreting a statute in a way which renders another statute nugatory. [Citation.]" (*Peltier v. McCloud River R.R. Co.* (1995) 34 Cal.App.4th 1809, 1816 [41 Cal.Rptr.2d 182].) █ Because the DMV's interpretation of section 13359 turns every unsuccessful application for a class B license into an authorization to revoke the applicant's class C license, it effectively negates the lower statutory threshold for entitlement to a class C license. For these reasons, we must reject the DMV's interpretation of section 13359.

Because the DMV's argument depends upon an incorrect interpretation of section 13359, the argument fails. We therefore need not address its other steps.

## DISPOSITION

The judgment is affirmed. Respondent shall recover her costs of appeal.

Vogel, Acting P. J., and Jackson, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.